Noma Electric Corporation v. Commissioner.
Noma Elec. Corp. v. Commissioner
Docket No. 36188.
United States Tax Court
1953 Tax Ct. Memo LEXIS 411; 12 T.C.M. (CCH) 1; T.C.M. (RIA) 53008; January 8, 1953
*411 Held, that payments received by a corporation pursuant to Section 16 (b) of the Securities Exchange Act of 1934 because of directors' profits constituted ordinary income under Section 22 (a), I.R.C.General American Investors Company, Inc., 19 T.C. 581, promulgated December 30, 1952, followed. Karl W. Windhorst, Esq., 125 Park Ave., New York, N. Y., for the petitioner. Arthur L. Nims, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Respondent has determined a deficiency in petitioner's income tax for the calendar year 1944 in the amount of $8,917.90. In the deficiency notice adjustments were made to 1944 income as follows: Taxable Year Ended December 31, 1944
Adjustments to Net Income
Net income as disclosed by original
return
$142,490.88
Unallowable deductions and addi-
tional income: (a) Capital stock tax
$ 2,500.00
(b) Contributions
1,400.67
3,900.67
Total
$146,391.55
Nontaxable income and additional
deductions: (c) Net operating loss
deduction
$84,665.13
(d) Amortization of
emergency fa-
cilities
7,372.55
92,037.68
Net income as revised
$ 54,353.87
*412 The adjustment in controversy relates to the following 1945 adjustment which directly affects the net operating loss deduction in 1944 of $84,665.13: "(a) This item represents the amount which you received from two of your directors in this year pursuant to the provisions contained in Section 16 (b) of the Securities and Exchange Act of 1934, as amended by Public Law 621, 74th Congress, approved May 27, 1936, on account of their transactions in your capital stock. It is held that this item constitutes taxable income and inasmuch as you failed to include it in your gross income in preparing your return, it is now included in your gross income for this year." By appropriate assignment of error petitioner contests this adjustment and also takes the position that if the contested amount is income the proper year to include it is 1944, not 1945. The other adjustments are not contested by petitioner. Originally respondent's determination that this additional income should have been reported in 1945, raised a second issue involving a net operating loss. However, respondent now takes the position that this income was realized in 1944, and has amended his answer to include this position. *413 Any change in computation will be given effect under Rule 50. Findings of Fact All the facts have been stipulated and are found accordingly. The petitioner is a corporation organized under the laws of the State of New York with its principal office at 55 West 13th Street, New York City. The returns for the periods here involved were filed with the Collector of Internal Revenue for the Second District of New York. The petitioner kept its books of account and filed its tax returns for the years 1944 and 1945 on the calendar year basis and on the accrual method of accounting. During the years 1943, 1944, and 1945, Joseph H. Ward and James E. Dougan were stockholders and members of the board of directors of the petitioner. On various dates from November 8, 1943 to December 11, 1944, inclusive, varying amounts of the petitioner's common stock were either purchased and sold or sold and purchased by Ward and Dougan within periods of less than six months. With respect to these stock transactions, Ward and Dougan realized profits in the respective amounts of $4,556.45 and $2,004.81. The stock transactions detailing the amounts and dates of sales and purchases and the amounts of *414 the profits realized by Ward and Dougan are as follows: Joseph H. Ward
Sold
Bought
Date
Shares
Amount
Date
Shares
Amount
Profit
1-10-44
100
$ 574.43
11- 8-43
100
$ 409.00
$ 165.43
1- 5-44
100
462.94
11- 9-43
100
409.00
53.94
1- 3-44
100
462.94
11-12-43
100
409.00
53.94
1- 5-44
100
450.94
12-43
100
409.00
41.94
1- 3-44
100
437.94
12-43
100
409.00
28.94
12-31-43
100
437.94
12-43
100
409.00
28.94
11-15-43
100
412.94
12-43
100
409.00
3.94
700
$ 3,240.07
700
$2,863.00
$ 377.07
11-30-44
200
$ 3,410.21
8- 2-44
100
$ 787.27
8- 2-44
100
799.50
200
$ 3,410.21
200
$1,586.77
$1,823.44
11-29-44
300
$ 5,008.44
8- 2-44
100
$ 799.50
8-18-44
200
1,853.00
300
$ 5,008.44
300
$2,652.50
$2,355.94
Total
1,200
$11,658.72
1,200
$7,102.27
$4,556.45
James Dougan
12-11-44
200
$ 3,832.81
8-44
200
$1,828.00
$2,004.81
Grand Total
1,400
$15,491.53
1,400
$8,930.27
$6,561.26
As of December 31, 1944, the petitioner accrued on its books the amounts of $4,556.45 and $2,004.81 representing accounts receivable due from Ward and Dougan by *415 reason of their liabilities arising under section 16 (b) of the Securities Exchange Act of 1934 in connection with their stock transactions as described above, and credited the total amount of $6,561.26 to capital surplus. During March 1945, the petitioner and the Securities Exchange Commission exchanged letters relative to the contents of a proxy statement. On March 5, 1945, the Securities Exchange Commission wrote to the petitioner a letter which reads in part as follows: "This is with reference to the preliminary copy of proxy material received March 1, 1945 in connection with the annual meeting of stockholders scheduled to be held April 2, 1945. * * *
"It is noted from the ownership reports filed by Messrs. Joseph H. Ward and James E. Dougan pursuant to Section 16 (a) of the Securities Exchange Act of 1934, that on various dates during the period from November 4, 1943 to December 11, 1944, inclusive, varying amounts of the issuer's common shares were purchased and sold or sold and purchased within periods of less than six months. If such purchases and sales were made by these individuals at the prevailing market prices for the shares on the dates of the transactions, *416 it appears that profits were realized which under the provisions of Section 16 (b) of the Act inure to and are recoverable by the issuer. In such event the appropriate facts, including the amounts recoverable by the issuer should be stated in the proxy statement pursuant to the requirements of Item 5 (I) (4) of Schedule 14A. If, however, it is deemed that such profits are not recoverable by the issuer, please submit as supplemental information an opinion of counsel on this point, together with a statement of the aggregate selling or purchase price of the shares in each transaction. In this connection, your attention is directed to the decision of the Circuit Court of Appeals, 2nd Circuit, in Smolowe v. Delendo, 136 Fed. (2nd), 231 which indicates the method of computing such profits." In a letter to the Securities Exchange Commission under date of March 13, 1945, the petitioner replied as follows: * * *
"We refer to your letter dated March 5, 1945, addressed to the attention of the undersigned, in connection with preliminary copy of proxy material filed on behalf of this company, in connection with the Annual Meeting scheduled to be held April 2, 1945. "We also *417 refer to conference had by the undersigned with Mr. Knute Anderson and Mr. Davidson at the Commission's office on March 10, 1945, wherein we discussed the contents of the first paragraph appearing on page 2 of your letter, and advised you that Messrs. Joseph H. Ward and James E. Dougan have inadvertently purchased and sold shares of stock of the company within a six-months' period in the mistaken impression that the first-in-first-out rule would be applicable. "Prior to the mailing of the solicitation material, both directors will have returned to the company the profits in accordance with the schedule delivered to the Commission through Mr. Anderson on March 10, 1945." * * *
On March 13, 1945, the petitioner received payments in the respective amounts of $4,556.45 and $2,004.81, pursuant to section 16 (b) of the Securities Exchange Act of 1934 from Ward and Dougan in discharge of their liabilities arising thereunder in connection with their stock transactions, and credited these amounts to its accounts. Opinion BLACK, Judge: Petitioner received $6,561.26 from two of its directors pursuant to section 16 (b) of the Securities Exchange Act of 1934 because of the directors *418 purchasing and selling petitioner's stock within periods of less than six months. The applicable statute is printed in the margin. [1] The only question raised here is whether the sum received constitutes taxable income. *419 The identical question was decided recently. We held such sums paid pursuant to section 16 (b) of the Securities Exchange Act of 1934 taxable under section 22 (a), I.R.C., General Americaninvestors Company, Inc., 19 T.C. 581, promulgated December 30, 1952. The instant case is determined by the above precendent, and we see no point in reiterating in detail the previous discussion. In the original pleadings, respondent determined that petitioner realized this income in 1945, and because of a net operating loss deduction the year 1944 which is before the Court was affected thereby. Petitioner took the position that if the contested item was income it was realized in 1944, not 1945. Respondent subsequently changed his position. Ad of December 31, 1944, petitioner accrued on its books the amount of $6,561.26 which is in controversy here. This money represented illegal profits of directors from transactions taking place between November 8, 1943 and December 11, 1944. The actual payment of $6,561.26 was received on March 13, 1945. Since petitioner's taxes were determined under the accrual method, income was realized in 1944 when it accrued, not in 1945 when the cash was received. *420 Though apparently this issue is not in controversy, the pleadings are not free of ambiguity. Decision will be entered under Rule 50. Footnotes
1. Section 16(b) of the Securities Exchange Act of 1934, 48 Stat. 896, 15 U.S.C. section 78p(b): (b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction of the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.↩